**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

Case No.: 9:18-CV-81124-RLR

RSA PROTECTIVE TECHNOLOGIES, LLC,  :
                                                                                         :
    Plaintiff,                                    :
                                                      :
                     v.                         :
                                                 :
SECURE USA, INC.; GUARDIAR          :
SOLUTIONS, INC.,                          :
                                                     :
    Defendants.

**ORDER CONSTRUING DISPUTED CLAIM TERMS**

THIS MATTER is before the Court on Plaintiff's Opening Claim Construction Brief (D.I. 42.1), Defendants' Responsive Claim Construction Brief (D.I. 44), and Plaintiff's Reply to Defendants' Responsive Claim Construction Brief (D.I 51.1). The Court has carefully considered each of these filings as well as the evidence submitted in support thereof. In addition, the Court held a hearing March 18, 2019, and is otherwise fully advised in the premises. ((D.I. 67) ("Tr.")).

**I. INTRODUCTION**

This is an action for patent infringement. At issue is U.S. Patent No. 8,215,865 ("the '865 Patent" or "patent-in-suit"), which relates to an anti-ram system and method of constructing shallow mount security bollards. In its Amended Complaint (D.I. 19), Plaintiff alleges that Defendants' shallow mount security bollards infringe independent claims 1, 16, and 33 of the '865 Patent, as well as the following claims that depend upon them: 2-5, 7-10, 12-15, 17-21, 23-26, 28-32, 34-35. The parties now seek construction of various terms used in those claims.

**II. LEGAL STANDARD**

The construction of patent claim terms is a question of law for the Court to decide. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996). It is the general rule that the

words of a claim be given their ordinary and customary meaning, as understood by a person of ordinary skill in the art when read in the light of the specification and prosecution history. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005); *Blackbird Tech LLC v. ELB Elecs., Inc.*, 895 F.3d 1374, 1377 (Fed. Cir. 2018); *Aventis Pharms., Inc. v. Amino Chems. Ltd.*, 715 F.3d 1363, 1373 (Fed. Cir. 2013) ("There is a heavy presumption that claim terms are to be given their ordinary and customary meaning."). "The context of the surrounding words of the claim must be considered; every word must be taken into account when construing a claim." *20/20 Vision Ctr., LLC v. Vision Precision Holdings, LLC*, No. 9:18-cv-80670, 2018 U.S. Dist. LEXIS 189284, at *4 (S.D. Fla. Nov. 6, 2018) (J. Rosenberg) (citing *IGT v. Bally Gaming Int'l, Inc.*, 659 F.3d 1109, 1117 (Fed. Cir. 2011)); *see also Phillips*, 415 F.3d at 1314 ("[T]he ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and *claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words*.") (emphasis added). Other claims should also be considered. For example, the Doctrine of Claim Differentiation provides that "the presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim." *Phillips*, 415 F.3d at 1315.

The claims should be read in light of the specification, however, "limitations from the specification are not to be read into the claims, … for 'it is the <u>claims</u> that measure the invention.'" *Golight, Inc. v. Wal-Mart Stores, Inc.*, 355 F.3d 1327, 1331 (Fed. Cir. 2004) (emphasis in original) (internal citation omitted). Indeed, "although the specification often describes very specific embodiments of the invention, we have repeatedly warned against confining the claims to those embodiments." *Phillips* at 1323. That is why there are only two exceptions to the "plain and ordinary meaning" rule: "1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of a claim term either in the specification or during prosecution." *Thorner v. Sony Computer Entertainment America LLC*, 669 F. 3d 1362, 1365 (Fed. Cir. 2012); *see also Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996).

When considering the specification, the Court should consider whether the patentee demonstrated an "intent to deviate from the ordinary and accustomed meaning of a claim term by including in the specification expressions of manifest exclusion or restriction, representing a

2

clear disavowal of claim scope." *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002). "It is . . . not enough that the only embodiments, or all of the embodiments, contain a particular limitation. We do not read limitations from the specification into claims; we do not redefine words. Only the patentee can do that. To constitute disclaimer, there must be a *clear and unmistakable disclaimer*." *Thorner*, 669 F.3d at 1366 (emphasis added).

Additionally, "the prosecution history can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be." *Phillips*, 415 F.3d at 1317. Like the specification, representations made to obtain a patent may be used to limit the meaning of the claim terms when aspects of the invention were disclaimed or disavowed during prosecution. *Standard Oil Co. v. Am. Cyanamid Co.*, 774 F.2d 448, 452 (Fed. Cir. 1985). But "[a]bsent a *clear disavowal or contrary definition* … the patentee is entitled to the full scope of its claim language." *Home Diagnostics, Inc. v. LifeScan, Inc.*, 381 F.3d 1352, 1358 (Fed. Cir. 2004); *Epistar Corp. v. Int'l Trade Comm'n*, 566 F.3d 1321, 1335 (Fed. Cir. 2009) (finding even a direct criticism of a particular technique did not demonstrate a clear disavowal). With these principles in mind, the Court now turns to the specific terms at issue in this case.

### III. TERMS AND CLAIMS AT ISSUE

The parties dispute the proper construction of nine claim terms. The Plaintiff proposes that the disputed claim terms have plain and ordinary meanings and oftentimes the disputed terms have common usages that do not require construction at all. For that proposition, the Plaintiff uses the claims, specification, and prosecution history to demonstrate that a person of ordinary skill in the art (a "POSA") reading the patent-in-suit at the time of the application would assign the plain and ordinary meaning to the disputed terms. Further, the Plaintiff explains that the patentee did not act as its own lexicographer, and did not disavow claim scope in the specification or during the prosecution history of the patent-in-suit.

On the other hand, the Defendants seek to add limitations from the specification into the claim terms and attempt to support their position using attorney argument to allege multiple disavowals and estoppels. The Court will address each disputed term below.

The disputed terms, appearing in bold font below, are found in asserted independent claims 1, 16, and 33 of the '865 Patent. The ninth disputed term appears only in claim 33.

3

Claim 1, illustrative of all the independent claims, is reproduced in element format, with the claim terms at issue bolded:

A **bollard structure** comprising:

1. at least one bollard; and

2. a **base** comprising **opposed ends** and **a plurality of structural members which intersect and are tied together**, for each bollard of the **bollard structure** at least one **first structural member** extending from a first of the **opposed ends** of the **base** to a second of the **opposed ends** of the **base** in a first direction intersecting with the **opposed ends**, and at least one **structural member** extending to intersect with the at least one **first structural member**;

3. each bollard being **secured** to at least one of the at least one **first structural member** and the at least one **structural member** of the **base** for the respective bollard and extending upwardly from the base so as to transmit forces applied to the at least one bollard to the base;

4. wherein the **base** is configured to be mounted in a shallow excavation with the at least one bollard extending above grade; and

5. **wherein the at least one first structural member or the at least one structural member or both are configured or tied together to retain within the base supporting media introduced into the base** when the base is mounted in the excavation such that the rotation is resisted of a bollard or bollards and the base from an impact against the bollard or bollards.

## IV. CONSTRUCTION OF DISPUTED TERMS[1]

### a. "base"

Plaintiff proposes that this term need not be construed and has a plain and ordinary meaning to a POSA at the time of the invention but, in the alternative, that this term may be construed as "the structure supporting the bollard." Defendants argue that the plain and ordinary meaning of this term proposed by Plaintiff is incorrect and that "base" should be narrowed to a "*continuous planar framework* of at least one of the first structural members *sharing the same elevation* and *welded or bolted* to one or more of the structural members *sharing the same elevation* and *extending between the first structural members such that the impact load to one bollard is transferred to the first structural members of the framework secured to other bollards of the plurality of bollards*."[2]

---

[1] The parties have agreed that the claim term "supportive media" be construed to mean "soil or concrete."

[2] Additional claim limitations proposed by Defendants appear bold and italicized.

Plaintiff's plain and ordinary meaning is supported by the use of the term "base" in the claims, specification, and prosecution history. (D.I. 42.1 at 5-8). The patent claims are internally consistent when "base" is construed as "the structure supporting the bollard." (D. I. 51.1 at 4, Ex. 57). The use of "base" in the patent specification is also consistent with the base as the structure supporting the bollard. (D.I. 42.1 at 6). Defendants' proposed construction contains three additional limitations that the claimed base 1) be a "***continuous planar framework***"[3]; 2) be made up of structural members that "***share the same elevation***"; and 3) be made up of structural members that are "***welded or bolted***" to one another.

Defendants set forth two main arguments in an effort to support their proposal that "base" must include the limitation "continuous planar framework." First, they argue that a "continuous planar framework" is "a key characteristic of the invention," (D.I. 44 at 5) and second, that prosecution history estoppel bars any claimed base except those containing a "continuous planar framework." (D.I. 44 at 5-6). Both arguments are unpersuasive.

The only support Defendants offer in the specification for their argument that an "extended horizontal framework" is a "key characteristic of the invention" is one statement in the specification that an "extended base or pad" does not provide the "sufficient resistance to stop the rotation of the pipe bollard." (D.I. 44 at 5; '865 pat. at col 5:38-41). But "an extended base or pad" is much broader than Defendants' more limited construction and the components of the claimed "base" are the components of the "extended base or pad." There is not sufficient evidence to allow the Court to make the inferential leap Defendants request, i.e. between an "extended base or pad" and "a continuous planar framework of at least one of the first structural members sharing the same elevation and welded or bolted to one or more of the structural members sharing the same elevation." The term "planar" is found only once in the specification to describe the preferred embodiment in Fig. 3 as possessing a "generally planar upper and lower surface." ('865 pat. at col. 7:55-58). The use of a preferred embodiment to support narrowing a

---

[3] Throughout their arguments, Defendants use the phrase "continuous planar framework" interchangeably with "continuous and longitudinally extending," "extended horizontal framework," "horizontal framework," and other iterations. Defendants seek to add this limitation to the disputed terms addressed herein at subsections a, f, and g. Defendants do not adequately describe what they mean by these descriptive phrases that they seek to import into the meaning of the claim language, despite arguing that all of the figures and embodiments in the patent and prosecution history show such a "continuous planar framework." (Tr. at 34).

5

claim term is impermissible. The word "plane" is also used in dependent claims 3 and 19 to describe axes that extend parallel to the plane of a base. Indeed, because these are dependent claims, importing these limitations into the independent claim from which they depend would violate the Doctrine of Claim Differentiation. (D.I. 51.1 at 9).

Defendants also rely on an overly broad theory of prosecution estoppel whereby they argue that patentee has surrendered all subject matter between a "bollard assembly" and a "bollard structure." Defendants argue that an amendment made by the applicant during examination estops Plaintiff from claiming a bollard structure that is not a "framework or grillage." (D.I. 44 at 7-8). The Court does not find any estoppel here. Defendants do not specify with any clarity whether this particular amendment to the claim language was made to overcome prior art, what the art showed, and what subject matter was allegedly disclaimed. Instead, Defendants propose a blanket estoppel that limits the patent claims to only narrow, specific embodiments. However, a careful review of the file history informs that the "assembly" versus "structure" amendment to the preamble was *not* made to overcome the cited art, but rather the art was distinguished because the present invention is directed to a bollard with a *shallow* mount. (D.I. 51.1 at 3). Thus, the only subject matter surrendered was between a bollard structure requiring a deep excavation and a shallow mount bollard. The prosecution history relied upon by Defendants does not evidence any estoppel, let alone a clear and unmistakable surrender as required to sustain a prosecution history estoppel.[4] *See Home Diagnostics*, 381 F.3d at 1358.

Defendants' argument that the claim term "base" must be made up of structural members "sharing the same elevation" is grounded on the same specification and prosecution history arguments set out for "continuous planar framework." (Tr. at 35, 54-55). As just explained, those arguments do not reasonably stand for the proposition Defendants propose, and the positions fall very short of the clear and unmistakable requirement. (D.I. 51.1 at 2-5). Defendants further argue that the "continuous planar framework" is a necessary result of the claim's proscribed arrangement of structural members that "share the same elevation." (D.I. 44 at 7). But, the only support Defendants provide for this argument is its own observations of

---

[4] Defendants attempt to support its position as to other disputed claim terms using this same prosecution history theory. The Court does not find this argument of Defendants compelling for any disputed claim terms.

6

specific preferred embodiments, which as a matter of law cannot be used to limit the scope of a patent's claims. (Tr. at 35). Moreover, it is simply not true that the specification explicitly or implicitly disclaims all bases in which structural members do not "share the same elevation." There is no mention of the "same elevation" in the patent specification, and even the preferred embodiments do not depict structural members "sharing the same elevation." (D.I. 51.1 at 4). Defendants' position is without reasonable support.

Defendants also submit that the construction of "base" requires that the structural members that make up the base are "welded and bolted" to one or more structural members. Defendants disregard both the patent specification and prior art of record teaching other means for securing parts of a structure. *See Blackbird Tech LLC v. ELB Elecs., Inc.*, 895 F.3d 1374, 1377 (Fed. Cir. 2018) (internal citations omitted) (holding that the claim term "attachment surface" could not be construed to contain the limitation that the "attachment surface be secured to the ballast cover" via a "fastening mechanism" because "the specification explains that the fastening can be achieved by many different types of fastening mechanisms" and never refers to the fastener as an "essential element" of the invention).

Defendants' claim that Plaintiff seeks to use the plain and ordinary meaning of the "base" to "cover any base." (D.I. 44 at 8). However, that position ignores the surrounding words of the claim. The term "base" appears in Elements 2, 3, 4, and 5 of the claims, and each element limits the "base" accordingly. For example, Element 2 states that the "base" is comprised of "opposed ends and a plurality of structural members which intersect and are tied together" to intersect with the opposed ends. Element 3 describes how the bollard is attached to the "base." Element 4 instructs how the claimed base is to be configured in a shallow mount, and Element 5 mandates that the "base" must be configured to accept media and work as intended. In light of the limitations the claim already places on "base," Defendants' proposed construction is overly restrictive. Defendants' construction would result in an internally inconsistent claim. If the Court were to accept Defendants' proposed construction for the term "base," the "welding or bolted" term would directly conflict with the "intersect and are tied together" element, vitiating the "intersect and are tied together" requirement. (D.I. 51.1 at 4, Ex. 57). Plaintiff's construction is not overly broad. (D.I. 44 at 8). Rather, it is Defendants' proposed construction that is overly narrow, to the point that it may not cover all embodiments of the invention, as the specification discloses that "[w]hile in the preferred embodiment of this invention the base or

7

pad is rectangular, other shapes can be used, such as angled and curved bases, zigzags, and indented, so as to go around an appurtenance." ('865 pat. at col 3:21-24; *see also Modine Mfg. Co. v. United States Int'l Trade Comm'n*, 75 F.3d 1545, 1550 (Fed. Cir. 1996) ("[A] claim interpretation that would exclude the inventor's device is rarely the correct interpretation.")). The Court finds that "base" should be given its plain and ordinary meaning "the structure supporting the bollard."

### b. "opposed ends"

Plaintiff proposes that this term need not be construed and has its plain and ordinary meaning but, that in the alternative, it may be construed as "opposite ends." Defendants propose that the term be construed as "a first end of the base *on the side of expected impact* of the bollards, and a second end of the base that is *opposite the side of expected impact* of the bollards."

Plaintiff's proposed construction is supported by the claim language itself, and statements made during the prosecution of the patent-in-suit. When the plain and ordinary meaning of "opposed ends" is inserted into the claim, the claim is consistent with the intent of the patentee. (D.I. 51.1 at 6, Ex. 57). The United States Patent & Trademark Office ("PTO") Examiner applied the plain and ordinary meaning of "opposed ends" while discussing the prior art of record during prosecution of the patent-in-suit, evidencing that a POSA would understand that "opposed ends" was being used according to this customary plain and ordinary meaning. (D.I. 42.1 at 9-10). Neither the Examiner nor the patentee ascribed any other meaning to "opposed ends" apart from the plain and ordinary meaning of that term.

Defendants do not support their proposal that the "opposed ends" relate to the direction of impact beyond a specific preferred embodiment. This argument is unavailing for multiple reasons. First, the patent claims and specification are silent with respect to "opposed ends" and any orientation of the bollard during impact. Second, the specification includes various embodiments depicting bollard structures that receive impact from more than just a single direction. ('865 pat. at figs. 23, 25, and 42). Indeed, additional embodiments, incorporated by reference into the patent-in-suit, clearly evidence that "opposed ends" are not oriented or defined with respect to the expected impact direction. (Tr. at 59-60). Defendants' proposal does not explain or account for those embodiments.

Defendants cite to the prosecution history of the '878 application for support. (D.I. 44 at 16). In this application, filed after the patent-in-suit, "opposed ends" and "opposed sides" were claim elements to the pending claims when the application was abandoned. However, even the "opposed ends" and "opposed sides" elements of those abandoned claims did not relate those sides or ends to the direction of impact. (D.I. 51.1 at 6). Indeed, Defendants do not point to any statement or clear implicit inferences from the prosecution history that can reasonably support its directional limitation.

### c. "secured"

Plaintiff proposes that this term be construed according to its plain and ordinary meaning to mean "fix or attach (something) firmly." Defendants propose that this term be limited to "*welded or bolted*."

Plaintiff's construction is supported by the use of the term "secured" in the claims and the rest of the intrinsic record. The patent specification does not limit the term "secured" to any specific method, and in fact discloses ways for securing apart from "welding or bolting." (D.I. 42.1 at 11). The term "secured" was also used in the prior art of record to describe different methods of securing pieces of a structure. (D.I. 42.1 at 11-12). The use of the claim term in the prior art of record—most of which were also bollard structures—is evidence of the understanding of "secured" by a POSA. Because Plaintiff's proposed construction is consistent with the plain and ordinary meaning of the term, and the intrinsic and extrinsic record, it should be adopted.

Defendants' proposed construction impermissibly imports limitations from the specification. Defendants point to specific parts of the specification that refer to securing components of the bollard structure using "welding or bolting." (D.I. 44 at 17-18). But the specification does not limit the invention to a bollard structure that is "welded or bolted," nor does it disparage other means for securing. There was also no discussion in the prosecution history of "welding or bolting" or the means for "securing" pieces of the invention. Therefore, no estoppel or disavowal of methods for "securing" other than "welding or bolting" occurred. Rather, "welding and bolting" is clearly disclosed in the specification as one way to "secure" parts of a bollard structure, and claim terms cannot be limited by a preferred embodiment.

Defendants argue that the invention could not function without the use of "welding or bolting" and that it is necessarily a "feature of the invention." (D.I. 44 at 17-18). But without a

"clear and unmistakable" disavowal in the specification or file history, it is improper to limit the claim term as such. Defendants rely on a statement in the patent specification noting that a single, damaged bollard can be "cut out" of a row of bollards and attempt to argue that this "cutting out" is a "feature of this invention," resulting in a disavowal of any methods of "securing" that do not require removal by cutting out. (D.I. 44 at 18). However, that statement neither mentions nor infers that the damaged bollard was "welded or bolted." The damaged bollard and pad could be "cut" from its concrete surrounding, rather than from a structural member. Indeed, a bollard pad can be secured to an adjacent pad by post tensioning members, not "welding or bolting." (D.I. 42.1 at 11; '865 pat. at col. 8:49-55). Defendants' argument that any methods for "securing" other than "welding or bolting" have been disclaimed do not meet the requirement that a disavowal be "clear and unequivocal" such as to limit the meaning of a claim. Defendants reliance on *Poly-America, L.P. v. API Indus. Inc.*, 839 F.3d 1131,1136-37 (Fed. Cir. 2016) is misplaced because in that case the disavowals were clear and unequivocal.

### d. "structural member"

Plaintiff proposes that this claim term has a plain and ordinary meaning of "a constituent piece that offers support to a structure." Defendants propose that this claim term be construed as "a ***longitudinally extending tubular or angular member*** which is ***welded or bolted*** to and ***sharing the same elevation*** as at least one first structural member of the same base."

The intrinsic evidence supports Plaintiff's proposal. The term "member" is used extensively in the patent, both in the claims and the specification. That term is used by a POSA to mean a "constituent piece." (D.I. 42.1 at 13). The term "structural member" was used consistently with its plain and ordinary meaning during the prosecution of the patent-in-suit as well as in the prior art of record. (D.I. 42.1 at 14). Moreover, none of the criteria are met to justify a departure from the plain and ordinary meaning. The patentee did not act as his own lexicographer, nor were there any disavowals or estoppels in the specification or file history. *Vitronics*, 90 F.3d at 1582. Plaintiff's proposed construction is also consistent with the rest of the claim language. When Defendants' proposed construction is inserted into the claim, the claim becomes inconsistent by first providing that the "structural members" are "welded and bolted" and then immediately afterward reciting that the "structural members" are "tied together." (D.I. 51.1 at 9, Ex. 57). Defendants' construction would vitiate the "tied together"

10

element of the claim. This mandates a finding that Defendants' proposed construction is improper.

Defendants seek to import into the claim term the limitations that the "structural member" be "*longitudinally extending*"; "*tubular or angular*"; "*welded or bolted to the base*"; and "*share the same elevation*" as at least one first structural members of the same base." (D.I. 44 at 12). The intrinsic record provides no support for the limitation that any part of the structure be "longitudinally extending." This phrase is only used in the specification in reference to preferred embodiments, does not operate as a disclaimer, and cannot be used as an all encompassing limiter of the claim terms. (D.I. 51.1 at 8).

Defendants' attempt to limit the term "structural member" to a "tubular or angular member" is also improper as it violates the Doctrine of Claim Differentiation. Dependent claims 5 and 12, which depend from Claim 1, further limit the "structural members" to tubular members (claim 5) and angles (claim 12). (D.I. 42.1 at 12-13). Therefore, "structural members" should not be construed as limited to tubular or angular members as Defendants propose.

For reasons previously discussed, Defendants' argument that the invention cannot function if the members are not "in the same plane" or do not "share the same elevation" must fail. (D.I. 44 at 14). Dependent claims 3 and 19 in the '865 Patent refer to axes that are "parallel to a plane of the base." It is thus presumed that independent claims 1 and 16 should not be construed to include any limitations concerning members being on the same plane or elevation. (D.I. 51.1 at 9). Defendants' argument that their proposed construction does not violate the Doctrine of Claim Differentiation because it only requires the "first structural member" and "structural member" to lie in the same plane—not "all intersecting structural members"—is unconvincing. (Tr. at 53). Because dependent claims 3 and 19 do not refer to "all" structural members, Defendants have not demonstrated why their proposed limitation is different than the limitations already included in the dependent claims.

Also detailed above, the limitation that parts of the bollard structure be "welded or bolted" is improper because it is taken from a preferred embodiment. *See supra* pp. 7. This importation of limitations from preferred embodiments provides the only basis for Defendants' position that a "structural member" must be distinct from the "first structural member." Defendants rely only on Fig. 3 in the specification to show this difference. But "limitations from the specification are not to be read into the claims." *Golight,* 355 F.3d at 1331. Even if every

embodiment contained the proposed limitations, it does not follow that the claim language should be construed to include those limitations. *Thorner*, 669 F.3d at 1366-67.

As Plaintiff points out, the prior art discloses "structural members" that do not contain the limitations Defendants propose, suggesting that a POSA would understand the term "structural member" to mean "a constituent piece that offers support to a structure." (D.I. 42.1 at 14). The Court finds that "structural member" means "a constituent piece that offers support to a structure."

### e. "first structural member"

Plaintiff proposes that this claim term has a plain and ordinary meaning of "a structural member" that is first in a plurality of structural members. Defendants propose that the claim term should be construed completely different from "structural member" to mean "a *hollow tubular* member that *transversely extends* between opposed ends of the base, and that is *welded or bolted* to the bollard, and that has a *plurality of apertures formed into the top side for receiving supporting media*."

Neither the '865 Patent's claims nor the specification define or describe the "first structural members" or the "structural members," except to provide that the members intersect. ('865 pat. at claims 1, 16, 33). The independent claims start out by describing "a plurality of structural members which intersect and are tied together," and then describe that "for each bollard of the bollard structure, at least one *first structural member* extending from a first of the opposed ends of the base to a second of the opposed ends of the base." This passage indicates that a "first structural member" is simply modified by the adjective "first" to orient the reader to the first "structural member" of the "plurality of structural members" being discussed in the claims. (Tr. at 64-65).

Defendants propose that a "first structural member" should have entirely different characteristics than "structural members." Defendants define a "structural member" as a "longitudinally extending tubular or angular member" and "first structural member" as "a transversely extending hollow tubular member with apertures," despite no instances of the patentee acting as his own lexicographer or disavowing any claim scope concerning the composition and direction of the structural members. Instead, Defendants import four separate limitations from a preferred embodiment—that the "first structural member" 1) be *hollow and tubular*; 2) *transversely extend* between opposed ends of the base; 3) be *welded or bolted* to the

12

bollard; and 4) *have a plurality of apertures for receiving supporting media*. (D.I. 44 at 9-12). Defendants again rely on Fig. 3 of the '865 Patent, a preferred embodiment, for its argument. According to Defendants, because Fig. 3 contains a "transversely extending tubular member" and "apertures," a "first structural member" must be construed as a transversely extending, hollow or tubular member that contains apertures. (Tr. at 48; '865 pat. at col:7:52-55). Notably, Defendants fail to address other embodiments in which bollard structures are described that do not have any apertures on any structural members. (Tr. at 68; '865 pat. at Fig. 43). Defendants' attempt to import limitations from the specification is not justified.

Defendants also argue that the patentee disclaimed a "first structural member" without apertures during the prosecution of the patent-in-suit. However, no such disavowal or estoppel occurred. In a December 28, 2010 Office Action, the applicant submitted to the PTO figures that contained apertures. (D.I. 51.1 at 12). On January 24, 2012, the applicant distinguished its invention from the prior art reference Fuchs because Fuchs contained a base plate that prevented supporting media from being poured into the base. *Id*. There was no mention of apertures. Rather, the applicant was clear that his invention was different from Fuchs because Fuchs did not allow media to be poured into the *base*, not because Fuchs did not allow media to be poured into any structural members. (Tr. at 68).

Defendants' argument that the claim term be construed to additionally require the "first structural member" be attached to the bollard by "welding or bolting" similarly fails as this limitation was taken from a preferred embodiment, without any disavowals of other means for attaching the bollard to the "first structural member." (D.I. 51.1 at 11).

### f. "bollard structure"

Plaintiff proposes that this claim term be construed as "a structure that contains one or more bollards," which is the plain and ordinary meaning of the term. Defendants propose that this claim term be construed as "bollard(s) *welded or bolted to the same base* to form a single *continuous and longitudinally extending* structure."[7]

---

[7] Defendants seek to add the limitation "welded or bolted" to the claim term "bollard structure" as well as to other disputed claim terms. The limitation "continuous and longitudinally extending structure is just another iteration of "continuous planar framework" and "extended horizontal framework," which Defendants also seek to add in to the construction of numerous claim terms, and is discussed above under the term "base."

13

Plaintiff's construction is consistent with the plain and ordinary meaning of the claim term, absent any clear and unequivocal estoppels or disclaimers and it should be adopted. As Plaintiff points out, inserting Defendants' proposed construction into the claim results in a redundancy, with the claim describing in Elements 1 and 2 that the "bollard structure" is comprised of a bollard, a base, and various structural members, and then continuing in Element 3 to require that "each bollard being secured to at least one of the at least one first structural member …". (Tr. at 78-80). If the term "bollard structure" was construed to contain the limitation that the bollard be "welded or bolted to the base," as Defendants propose, then the claim term would restate the same element twice—a bollard *welded or bolted* to a base where each bollard is *secured* to a structural member making up the base—making the claim inconsistent.

The claim term "bollard structure" is found in both the preamble and the body of all three independent claims. While "a bollard structure" in the preamble may provide antecedent basis for "the" claimed "bollard structure" found in the body of the claim, no other significance can be reasonably inferred from the structure of the claim. Defendants argue that the patentee's use of "the" mandates importation of additional limitations to the meaning of the "bollard structure." (D.I. 44 at 19-20). However, it does not follow that the use of "the" mandates an inference that additional limitations, beyond those already contained in the claims, be imported into the term "bollard structure." *See TomTom, Inc. v. Adolph*, 790 F.3d 1315, 1322-24 (Fed. Cir. 2015) (ruling that certain preamble terms were not limiting because these terms were merely duplicative of the terms in the body of the claim, even though the preamble did provide an antecedent basis for another term in the body of the claim).

In support of its proposed construction, Defendants again argue that the cancellation of the originally pending four claims directed to a "bollard assembly" constitutes a disavowal or estoppel of the claimed "bollard structure." It is evident, however, that there was no "clear and unequivocal" estoppel, and without such, the claim term cannot be so limited. *See supra* pp. 6.

Defendants also restate their previous argument that the specification includes a disavowal of "a base that is not continuous and extended" (D.I. 44 at 22) and that a "bollard structure" without such a base would not function. As discussed, there is no support for this proposition. *See supra* pp. 5-6. The specification never uses the phrase "continuous and

14

extended" and certainly never attributes the functionality of the invention to this feature.  (D.I. 51.1 at 10).

Defendants' proposed construction also contains the limitation that the "bollard structure" must include bollards "welded or bolted to the same base." (D.I. 44 at 20, 22).  In support of this argument, Defendants again argue that the invention would not work unless the bollards were "welded or bolted to the same base," with their support for this being a sentence in the specification stating that the "invention does not lend itself to the installation of a single bollard." (D.I. 44 at 22).  The Court rejects this argument as Defendants rely on a statement referring to "the bollard system" of the invention, not the claimed "bollard structure."  (D.I. 51.1 at 10).  Regardless, such a statement cannot constitute a "clear and unequivocal" disavowal of any bollard structure that does not contain bollards "welded or bolted" to the same base.

### g.   "plurality of structural members which intersect and are tied together"

Plaintiff relies on the plain and ordinary meaning of the term, and states that the Court need not construe it.  In the alternative, Plaintiff proposes that the term could be construed to mean "at least two structural members, which pass or lie across each other and are attached or fastened to one another."  Defendants propose that this claim term be construed as "a *planar framework* of at least one of the first structural members *sharing the same elevation* as and *welded or bolted* to one or more of the structural members to form a grillage."

Plaintiff's proposed construction is adopted because Defendants cannot show any disavowals or estoppels in the specification or file history that would warrant a limitation of the plain and ordinary meaning of this disputed claim phrase.  Plaintiff demonstrates that the plain and ordinary meaning of the words in the disputed phrase are used extensively in the art and understood by POSAs.  (D.I. 42.1 at 20-21).  As with the term "secured," the phrase "tied together" should not be limited to mean "welding or bolting." (*Id*. at 19).  This would improperly limit the claims based on the specification and preferred embodiments.

Defendants seek to import here many of the same limitations they attempt to import into other disputed terms. The Court is not persuaded by Defendants' arguments with respect to the three separate limitations they seek to import into the claim phrase: that the structural members be at the "*same elevation*"; "form a *planar framework*"; and "be *welded or bolted*" to one another.  The Court has already set out the reasons for why such limitations should not be imported into the meaning of the claims.  *See supra* pp 5-10, 11, 12, 14, 15.

15

> h. **"wherein the at least one first structural member or the at least one structural member or both are configured or tied together to retain within the base supporting media introduced into the base"**

Plaintiff proposes that this claim phrase has its plain and ordinary meaning, and, in the alternative, that the Court could construe this claim phrase as "wherein at least one structural member allows for supporting media to be placed or poured into the base." Defendants propose that the claim phrase be construed to mean "the first structural member or structural member or both that have a *plurality of apertures formed into the top side for receiving and retaining supporting media inside the first structural member or structural member or both*."

The Court adopts the plain and ordinary meaning as it is consistent with the claims, specification, prosecution history, and prior art. When used in the disputed claim phrase, as well as elsewhere in the claims, the term "configured" is used to describe the arrangement of part of the claimed structure. (D.I. 42.1 at 23-24). Claims 1, 16, 33 use the term "configured" in stating "wherein the base is configured to be mounted in a shallow excavation." *Id*. The specification describes different possible "configurations" of the bollard structure. ('865 pat. at col. 8:10-36). Similarly, the claim phrase at issue states that the structural members be "configured (or tied together) to retain in the base supporting media."

The independent claims previously instructed that the base is made up of various structural members that intersect and are tied together. The claim phrase at issue provides the additional limitation that the structural members be configured in such a way to allow the base (the intersecting and tied together structural members) to retain supporting media. It is clear that the claim instructs that the *base* retain supporting media, not the structural members themselves. (Tr. at 88-89). That feature is similarly described in the specification. ('865 pat. at col. 8:49-50). Defendants' argument that this claim phrase must be construed to require the structural members have apertures for retaining supporting media is improper. (D.I. 44 at 26-27). As discussed previously, there were no estoppels or disavowals concerning apertures. *Supra* pp 13. This limitation was taken from a preferred embodiment and the claim cannot be limited as such.

> i. **"at least one of the plurality of members that extend parallel to the ends of the base extending between a structural member to which a first bollard is secured and a structural member to which a second bollard adjacent to the first bollard is secured"**

Plaintiff proposes that this disputed claim phrase has its plain and ordinary meaning that should not be disturbed. In the alternative, Plaintiff asks the Court to construe this claim phrase

16

as "a member that extends parallel to one of the ends of the base and connect a structural member to which a first bollard is secured to a structural member to which a second bollard is secured." Defendants propose that this claim phrase be construed to mean "at least one of the plurality of either ***structural members or rebar members*** that ***extend generally parallel to the row of bollards***, and extending between structural members that are adjacent to one another and ***sharing the same elevation***."

Plaintiff's proposed construction is proper because it is consistent with the patent claims and intrinsic record, which evidence no estoppels or disavowals. This claim phrase is found in only independent claim 33, which claims a particular bollard structure with at least two bollards, where the bases of adjacent bollards are connected to each other with a plurality of members. The claim phrase uses the term "members," rather than "structural members" as was used previously in the claims. There is a presumption that claim terms are used uniformly throughout. *Phillips*, 415 F.3d at 1314-5. Two claims then depend from this independent claim, which provide additional limitations to what is recited in claim 33 by claiming that the "plurality of members" in claim 33 can be "structural members" (claim 34) or can be "rebar members" (claim 35). Therefore, under the Doctrine of Claim Differentiation, the "members" in the claim phrase at issue should not be construed to be "structural members" or "rebar members" as Defendants propose. (D.I. 51.1 at 15).

Defendants additionally attempt to limit the claim phrase such that "plurality of members" must "extend parallel to the row of bollards" and "share the same elevation." The claim language itself states that the members extend parallel to the ends of the *base*. Defendants provide no reason why this should be construed to mean that they extend parallel to the ends of the row of *bollards*. The claim language itself is most probative as to the meaning of a claim term. Finally, the Court has addressed that the claims should not be limited such that any members or structural members must "run parallel." *See supra* pp 6-7, 11.

Defendants include the same limitations into numerous disputed terms and phrases. (Tr. at 92). These include the limitations that the structural members have "apertures," that the structural members be "welded or bolted," that the members that make up the base "share the same elevation," and form a "continuous planar framework." If all of Defendants' proposed constructions were adopted, the independent claims would recite the same limitations over and over again. *Id*. The Court will not construe disputed terms in a way that would make the claim

17

duplicative. *Rozbicki v. Chiang*, No. 2014-1041, 2014 U.S. App. LEXIS 21838, at *12 (Fed. Cir. Nov. 14, 2014).

## V. CONCLUSION

For the foregoing reasons, it is **ORDERED** and **ADJUDGED** as follows:

1. "Base" means "the structure supporting the bollard";
2. "Opposed ends" means "opposite ends";
3. "Secured" means "fix or attach (something) firmly";
4. "Structural member" means "a constituent piece that offers support to a structure";
5. "Bollard structure" means "a structure that contains one or more bollards";
6. "First structural member" means "a structural member";
7. "Plurality of structural members which intersect and are tied together" means "at least two structural members, which pass or lie across each other and are attached or fastened to one another";
8. "Wherein the at least one first structural member or the at least one structural member or both are configured or tied together to retain within the base supporting media introduced into the base" means "wherein at least one structural member allows for supporting media to be placed or poured into the base"; and
9. "At least one of the plurality of members that extend parallel to the ends of the base extending between a structural member to which a first bollard is secured and a structural member to which a second bollard adjacent to the first bollard is secured" means "members that extend parallel to one of the ends of the base and connect a structural member to which a first bollard is secured to a structural member to which a second bollard is secured."

**DONE AND ORDERED** in Chambers, in West Palm Beach, Florida, this 15th day of May, 2019

                                                      **ROBIN L. ROSENBERG**
                                                      **UNITED STATES DISTRICT JUDGE**